**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JOSHUA MCCOLLUM, OAKFORD CRAWSON LLC, JEFFREY MAGOVENY, NG BOON MIN, LIM TECK YEOW, ALEXEJ KRAVETSKER, and MICHAEL MEDOVOJ, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

CIRCLE INTERNET GROUP, INC., and CIRCLE INTERNET FINANCIAL, LLC,

*Defendants*.

**Case No. 1:26-cv-11733-WGY**

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' FIRST OMNIBUS DISCOVERY MOTION

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 4

A. Insurance Policies ........ 5

B. Relevant Time Period ........ 5

C. CCTP Technical Documents ........ 8

D. Search Terms & Hit Reports ........ 10

E. Document Custodians ........ 12

1. Mr. Allaire, Mr. Tarbert, and Mr. Walia should be custodians. ........ 13

2. Mr. Saad should be a custodian. ........ 16

F. Organizational Charts ........ 17

V. CONCLUSION ........ 20

RULE 7.1 CERTIFICATION ........ 21

CERTIFICATE OF SERVICE ........ 22

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abiomed, Inc. v. Enmodes GmbH*,
2024 WL 4028295 (D. Mass. Sept. 3, 2024) .......... 11

*Aronstein v. Mass. Mut. Life Ins. Co.*,
2017 WL 2818993 (D. Mass. June 29, 2017) .......... 3

*Castillo v. Albert Einstein Coll. of Med. Inc.*,
2025 WL 1789827 (S.D.N.Y. June 30, 2025) .......... 18

*Diaz-Garcia v. Surillo-Ruiz*,
45 F. Supp. 3d 163 (D.P.R. 2014) .......... 7

*Doe v. Trump*,
329 F.R.D. 262 (W.D. Wash. 2018) .......... 18

*HealthEdge Software, Inc. v. Sharp Health Plan*,
2021 WL 1821358 (D. Mass. May 6, 2021) .......... 3

*Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*,
333 F.3d 38 (1st Cir. 2003) .......... 3

*Howington v. Taiwan Semiconductor Mftg. Co., Ltd.*,
2026 WL 242040 (N.D. Cal. Jan. 29, 2026) .......... 14

*In re Meta Pixel Healthcare Litig.*,
2023 WL 5767460 (N.D. Cal. Sept. 6, 2023) .......... 15

*Linet Ams., Inc. v. Hill-Rom Holdings, Inc.*,
2025 WL 889480 (N.D. Ill. Mar. 17, 2025) .......... 18

*MacDonald v. Hasbro Managerial Servs., LLC*,
2026 WL 1759175 (D.R.I. June 18, 2026) .......... 11

*Race v. Cambridge Health Alliance*,
2024 WL 2330741 (D. Mass. May 22, 2024) .......... 13, 14

*Serrano v. Cintas Corp.*,
699 F.3d 884 (6th Cir. 2012) .......... 13

**Page(s)**

*United States ex rel. Long v. Janssen Biotech, Inc.*,
2023 WL 2429358 (D. Mass. Mar. 9, 2023) ........ 17

*W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico*,
2013 WL 1352562 (D.P.R. Apr. 3, 2013) ........ 11

*Weidman v. Ford Motor Co.*,
340 F.R.D. 106 (E.D. Mich. 2021) ........ 19

**Rules**

Fed. R. Civ. P. 26(a) ........ 3, 4, 5

Fed. R. Civ. P. 26(b) ........ 3, 7, 8

Fed. R. Civ. P. 26(c) ........ 13

Fed. R. Civ. P. 26(f) ........ 4, 5

Fed. R. Civ. P. 37(a) ........ 5

**Other Authorities**

D. Mass. L.R. 26.1 ........ 3, 4, 17

D. Mass. L.R. 26.2 ........ 1, 4

D. Mass. L.R. 37.1 ........ 1

# I. INTRODUCTION

Pursuant to Local Rule 37.1(a), Plaintiffs seek an order from the Court directing Defendants to comply with basic discovery obligations. The intractable disputes, despite multiple conferrals, are:

- Defendants refuse to produce insurance policies that may provide coverage in this matter, even though Federal Rule of Civil Procedure 26(f) and Local Rule 26.2(a) required their production before Defendants served discovery.
- Defendants refuse to search for any documents beyond a two-week period, from April 1, 2026, to April 15, 2026, foreclosing discovery into their core defense: their Access Denial Policy and their decision to continue processing transactions they know are unlawful.
- Defendants refuse to provide technical documents sufficient to show how the blockchain-to-blockchain bridge (the Cross Chain Transfer Protocol, or CCTP) operates, even though they have argued that the CCTP's permissionless qualities should insulate them from liability.
- Defendants unilaterally selected five search terms, then refused to provide hit reports for their terms or Plaintiffs' proposed additional terms, depriving Plaintiffs of information needed to challenge the completeness of Defendants' search.
- Defendants refuse to search beyond the ten custodians they unilaterally designated.
- Defendants failed to investigate or produce organizational charts while simultaneously refusing to substantively confer on document custodians.

Four months have elapsed since the discovery planning conference, and only three months remain until the close of fact discovery. Plaintiffs seek the Court's assistance in moving this case forward.

## II. BACKGROUND

On April 1, 2026, a cryptocurrency platform called Drift was exploited for approximately $285 million of user deposits. The exploiters moved the stolen value from various types of cryptocurrencies into Circle's USDC stablecoin, then used Circle's CCTP bridging technology to transfer the USDC coins onto the Ethereum blockchain, where it would be harder to track, capture, and return to the rightful depositors.

Plaintiffs filed this action on April 14, 2026, alleging two common law claims against Circle: negligence and aiding and abetting. After Plaintiffs filed an amended complaint, Defendants moved to dismiss and for a stay of discovery. The Court denied the motion to stay and the motion to dismiss remains pending.

This motion addresses various deficiencies with Defendants' initial disclosures and responses and objections to Plaintiffs' first set of requests for production of documents. Plaintiffs served their document requests on July 7, 2026, and received Defendants' responses and objections on August 10, 2026. Defendants served their initial disclosures on June 30, 2026, but failed to identify any individuals likely to have relevant knowledge until August 28, 2026, when they unilaterally designated ten individuals as document custodians.

The parties conferred multiple times on each issue presented herein over the past month. Conferrals via videoconference took place on September 15, 2026, at 2:00pm ET; September 23, 2026, at 2:15pm ET; and September 25, 2026, at noon ET. Rosemary Rivas, Parker Hutchison, and Hanne Jensen were present for Plaintiffs at all conferences; Mark Rasmussen and Timothy Villari were present for Defendants at all conferences, and Victoria Petrimoulx joined the September 25 conference. The September 15 conference covered the search terms and custodians disputes; the September 23 conference covered the document request disputes, including the relevant time period objection; and the September 25 conference covered the search terms, custodians, and document request disputes.

Following the conferrals, Defendants gave Plaintiffs a take-it-or-leave it offer: accept that there would be no further discussion on search terms, custodians, or relevant time period, in exchange for two additional search terms ("Access Denial Policy" and "Iris") and two additional custodians (Muhammad Saad and Holly Maddox, job titles unknown). Plaintiffs declined this offer.

## III. LEGAL STANDARD

"District courts exercise broad discretion to manage discovery matters" and "are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants." *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). All discovery, but especially early discovery matters "such as the sources of information to be preserved and searched; number and identities of custodians whose data will be preserved or collected . . .; topics for discovery; [and] search terms and methodologies to be employed to identify responsive data" should be "collaborative." *HealthEdge Software, Inc. v. Sharp Health Plan*, 2021 WL 1821358, at *2 (D. Mass. May 6, 2021) (citation omitted); *accord* L.R. 26.1(a).

Parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). The party seeking discovery bears the burden of demonstrating relevance; once "the possibility of relevance is shown, the burden shifts to the party opposing disclosure to show that the discovery is improper." *Aronstein v. Mass. Mut. Life Ins. Co.*, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017).

As part of their initial disclosures, parties are obligated, "without waiting for a discovery request," to provide copies of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action." Fed. R. Civ. P. 26(a)(1)(A)(iv). Under the Local Rules of this Court, that disclosure should be made within 14 days of the discovery planning conference held

pursuant to Rule 26(f) and, in any event, must occur before that party may begin discovery. L.R. 26.2(a).

Parties are also required to identify by name "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(i). "All persons with such information should be disclosed, whether or not their testimony will be supportive of the position of the disclosing party." Fed. R. Civ. P. 26(a)(1), Advisory Committee Note to 1993 Amendments. The Court is empowered to order a defendant to submit a sworn statement that identifies "all persons then known to the defendant or the defendant's attorneys who . . . is known or believed to have substantial discoverable information about the claims or defenses, together with a statement of the subject and a brief summary of that information." L.R. 26.1(b)(2)(A).

## IV. ARGUMENT

After attempting to resolve these foundational disputes with Defendants, Plaintiffs are left without any alternative but to seek relief from the Court. Defendants have failed to make reasonable and timely disclosures required by the Federal Rules, and have refused to reasonably compromise on the basics: document custodians, search terms, and time period of discovery.

Several of the issues which are ripe for this Court's review are interrelated, but can be discussed generally as six concrete disputes regarding Defendants' (A) failure to disclose insurance policies, (B) unreasonable restrictions on the relevant discovery time period, (C) refusal to produce internal documents describing how the CCTP operates, (D) unilateral designation of search terms & refusal to provide hit reports, (E) unilateral designation of custodians, and (F) refusal to investigate or produce organizational charts or documents that reveal Circle's reporting structure. The Court should grant Plaintiffs' motion in full so that the parties can proceed with discovery.

**A. Insurance Policies**

Defendants were obligated to disclose any insurance policy that may provide coverage for Plaintiffs' claims months ago as part of the initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iv). They have not done so, in contravention of the Federal and Local Rules. *See* L.R. 26.2(a) (requiring that Rule 26(a)(1) disclosures be made "as soon as practicable and in any event . . . at or within 14 days after" the Rule 26(f) conference or at least "before that party may initiate discovery"). The Court should compel them to produce copies of their policies. *See* Fed. R. Civ. P. 37(a)(3)(A) ("If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.").

Plaintiffs tried to obtain insurance information without the Court's intervention,[1] including by reminding Defendants in writing, and at two discovery conferences, of their affirmative obligation under the Federal and Local Rules. Plaintiffs asked if there was any reason for the delay, and requested a date certain when Defendants would produce the insurance information. Defendants gave no explanation for the delay and responded: "probably by January," in reference to the close of fact discovery. *See* Case Management Order, ECF No. 28.

Plaintiffs respectfully request that the Court order Defendants to produce any policy or policies that provide potential coverage for the claims in this case within 14 days of the entrance of the Court's order.

**B. Relevant Time Period**

Defendants have lodged a global objection purporting to limit discovery to the two weeks following the Drift Exploit: April 1, 2026, to April 15, 2026. Although

---

[1] When Defendants failed to affirmatively disclose insurance information after the Rule 26(f) conference, Plaintiffs served RFP No. 15 seeking this information (though they were under no obligation to do so). Defendants agreed to produce any such policy or policies, but gave no date certain for the production.

Defendants say they will consider searching for and producing documents following April 15, 2026, they have not confirmed they will do so for any particular request that Plaintiffs have identified as warranting an extended timeframe, and they flatly refuse to search for documents predating the Drift Exploit. Defendants then rely on this position to avoid substantively discussing any requests for information that predates April 1, 2026, and to hold up discussions about the appropriate search terms to use when searching ESI. *See infra* Part IV.D.

Defendants' two-week limitation is facially unreasonable and categorically excludes relevant information, including documents relating to their primary defense. In their motion to dismiss, Defendants put Circle's Access Denial Policy front-and-center, arguing that their choice to continue processing transactions until they receive a court order to stop is a complete defense to both of Plaintiffs' claims. *See* Motion to Dismiss, ECF No. 26 at 2-5 & n.4, 14, 16 (referring repeatedly to the Access Denial Policy). The decision to adopt that policy—and any considerations that underwrote it—all happened years before the Drift Exploit.

Plaintiffs subsequently served several requests targeting the development of the Access Denial Policy and related internal decisions about why Defendants chose to continue processing transactions they suspect or know are the result of illegal activity, and under what circumstances they will choose to stop doing so. *See* Ex. A (RFP Nos. 5-7, 19).[2] Plaintiffs also sought information about the development of Circle's CCTP bridging technology and internal monitoring systems to better understand Circle's technical ability (or, as Defendants insinuate, the lack thereof) to prevent or stop illegal

[2] Plaintiffs have Defendants Circle Internet Financial, LLC's Responses & Objections to Plaintiffs' First Set of Production of Documents. For the purposes of this motion, the requests, responses, and objections are identical for both Defendants.

transactions. *Id.* (RFP Nos. 10-14).[3] And Plaintiffs sought information about Circle's responses to other exploits to understand whether Circle always acts consistently with that policy, whether any employees raised concerns about the approach, and whether exploits like Drift were foreseeable to Circle. *Id.* (RFP No. 20).

All of this information is plainly relevant to whether Defendants were negligent in the operation of their services, and whether they knowingly and substantially aided the Drift Exploit attackers. Plaintiffs shared these reasons with Defendants in writing and during conferrals, but Defendants maintain that any documents or communications predating April 1, 2026, are not relevant. Defendants have no particularized burden objection, and their claim of irrelevance and disproportionality is unsupported and wrong.

Plaintiffs are permitted discovery regarding Defendants' primary defense. Relevant discovery encompasses "any nonprivileged matter that is relevant to any party's claim *or defense*." Fed. R. Civ. P. 26(b)(1) (emphasis added); *see, e.g.*, *Diaz-Garcia v. Surillo-Ruiz*, 45 F. Supp. 3d 163, 168 (D.P.R. 2014) (granting motion to compel documents which plaintiffs sought to probe defendants' defenses). Defendants' technologies have been used to strip millions of dollars' worth of digital currencies from their owners on multiple occasions in the past few years, and Defendants updated their Access Denial Policy the month after the Drift Exploit occurred. *See* Motion to Dismiss, ECF No. 26 at 5 n.4. If Defendants held meetings, investigated policy or technical alternatives, or considered the reputational harm or profitability of an alternative approach, documents and communications reflecting those facts would clearly be relevant to Plaintiffs' claims and to testing Defendants' defenses.

Plaintiffs respectfully request that the Court enter an order clarifying that (1) Defendants' blanket two-week limitation on the relevant time period is unreasonably

---

[3] Plaintiffs are moving to compel responses to RFP No. 14 separately below. *See infra* Part IV.C.

restrictive, (2) documents relating to Circle's (a) adoption of its policies governing responses to hacks or exploits (including its Access Denial Policy) and (b) responses to prior exploits using its technology are relevant, and (3) if Defendants believe that any request for documents will result in voluminous and burdensome discovery, the parties should confer about setting a time limitation on any request.

**C. CCTP Technical Documents**

Plaintiffs served a document request seeking "Internal documents sufficient to show how the CCTP operates, including technical manuals, training guides, and user manuals." Ex. A (RFP No. 14). Defendants raised conclusory breadth and burden objections, then stated at conferral that they would produce publicly available documents describing how the CCTP functions.[4] Plaintiffs' complaint and Defendants' motion to dismiss already reference similar (or identical) publicly available documents. The public documents are insufficient to answer "how the CCTP operates"—specifically, how Circle may maintain or exert control over its so-called "permissionless" technologies. The answer to that question would be contained in "internal documents" like those contemplated by RFP No. 14.

RFP No. 14 requests information that is plainly relevant under Rule 26(b)(1), which permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Defendants have repeatedly asserted that the CCTP is "permissionless," in an effort to downplay the control Defendants are able to exert over their own technology, and to distance themselves from their decision to continue processing transactions. *See* Motion to Dismiss, ECF No. 26 at 5, 6, 14, 19. Whether that characterization is accurate depends entirely on how the

---

[4] Defendants offered only publicly available documents at the September 23 conferral, and said they would "need to check" if "anything internal" even existed. Three weeks passed, and Defendants gave no update.

CCTP actually functions: who can access it, under what conditions, what controls or gatekeeping mechanisms exist, and what role Defendants play in its operation. For example, public-facing documents suggest that Circle retains some ability to suspend developers' access to CCTP technology, but *how* Circle can or does suspend CCTP access is not publicly available.[5] The documents Plaintiffs seek are the most direct evidence on those questions. Defendants cannot place the CCTP's design and operation at the center of its defense while withholding the very materials that would allow Plaintiffs, and ultimately the factfinder, to test that defense.

Defendants' objections miss the mark. The request is not overbroad: it seeks only documents "sufficient to show" how the CCTP operates, a formulation courts routinely recognize as a narrowing device that permits the responding party to select a representative set of documents rather than conduct an exhaustive search. The request further identifies the specific categories of documents most likely to answer the question (technical manuals, training guides, and user manuals), which are discrete, readily identifiable materials that a company typically maintains in the ordinary course of business. A request that limited to a single subject squarely at issue is the opposite of overbroad.

The burden objection also fails, as Defendants have not described any burden with any particularity. Defendants have offered nothing beyond conclusory objections; nor could they plausibly do so: manuals and training materials are, by their nature, centralized documents created precisely so that people can understand how a system works. Locating and producing them should impose minimal burden, which is vastly

[5] Defining CCTP as a "Permissionless Product" and stating that "Circle may suspend or terminate your use of any Developer Tool (including any Permissionless Product) or Service, at any time for any reason." *See* Developer Terms of Service, available at https://console.circle.com/legal/developer-terms.

outweighed by the importance of the documents to Plaintiffs' understanding of the technology and how its operation may inform Defendants' defenses.

Defendants' only proposed limitation—that they will produce publicly available documents that describe how the CCTP functions—is unreasonable and will not provide insight into Circle's continued control or access to the technology it makes available to third party developers. Plaintiffs therefore request that the Court compel Defendants to search for and produce internal documents sufficient to show how the CCTP operates.

**D. Search Terms & Hit Reports**

Defendants have used only five terms to search for responsive ESI. Plaintiffs explained that Defendants' five terms were not sufficient to identify responsive ESI for all the RFPs served and requested that Defendants (1) consider adding additional terms proposed by Plaintiffs and (2) provide hit reports for their own terms and Plaintiffs' proposed terms so that the parties could evaluate breadth and burden of hit counts. Plaintiffs suggested additional search terms, including terms targeting the names of recent prior exploits using Defendants' technology, terms identifying discussions about law enforcement, and terms relating to Defendants' policies.

Defendants rejected Plaintiffs' requests, claiming that Plaintiffs had proposed too many search terms, and that the terms targeted irrelevant information. Defendants also refused to provide hit reports, claiming that because (in Defendants' view) the search terms targeted irrelevant information, running and sharing hit reports would somehow itself be burdensome.

At minimum, Defendants should be required to provide hit reports for each side's proposed search terms. Hit reports are a common automated feature of most, if not all, commercial e-discovery platforms. They permit parties to see how many documents a particular search term yields and the unique documents captured by that

term but not others. As a result, they are useful for evaluating, at a glance, whether search terms are overbroad, underinclusive, or duplicative of other terms entirely.

Defendants refuse to provide even this basic information but have identified no burden in doing so. Instead, Defendants claim that (1) they should not be required to use more terms because Plaintiffs only used three, and (2) requiring Defendants to prepare hit reports for terms they believe are too numerous or irrelevant would be burdensome.

Both objections are non sequiturs. First, what Defendants require from Plaintiffs is different in kind than what Plaintiffs require from Defendants. Fewer terms are needed to locate relevant documents for Plaintiffs, so those terms have no bearing on whether Defendants' terms are appropriately tailored.

Second, Defendants have identified no specific burden to *preparing hit reports* for *proposed* search terms. Courts nationwide and in this Circuit recognize hit reports as useful tools to evaluate whether search terms are adequate, and to substantiate parties' burden objections. *See MacDonald v. Hasbro Managerial Servs., LLC*, 2026 WL 1759175, at *2 (D.R.I. June 18, 2026) (noting that use of hit reports "would create full transparency into the resulting universe of potentially responsive documents" and regretting that "this could have occurred before the parties utilized the Court's time and resources . . . despite not having even a basic understanding of how many documents those search terms would return"); *W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico*, 2013 WL 1352562, at *3 (D.P.R. Apr. 3, 2013) (ordering discovery cooperation which "must include, but is not limited to, offering hit reports"); *Abiomed, Inc. v. Enmodes GmbH*, 2024 WL 4028295, at *5 (D. Mass. Sept. 3, 2024) (denying motion for protective order on burden objection where defendants "failed to substantiate [their burden] speculation with, for example, hit reports showing the volume of unique documents that would need to be produced").

Plaintiffs shared this authority with Defendants weeks ago. Nevertheless, Defendants maintain that they will not agree to provide hit reports until Plaintiffs return a proposed list with fewer overall search terms and search terms limited to those that comport with Defendants' view of the case: that no documents predating April 1, 2026, are ever relevant.

Irrespective of the fact that Defendants cannot dictate what is and is not relevant to Plaintiffs' claims, Defendants' objection does not explain Defendants' refusal to provide hit reports for their *own* terms, or for Plaintiffs' proposed terms that are targeted at the Drift Exploit. For example, it would be useful to know if Defendants' five terms are highly overlapping, or if Plaintiffs' proposed terms would uncover different documents. But even agreeing to run hit reports for terms that target prior exploits and Circle's policies poses no real burden to Defendants and does not require them to agree that those terms are used. And guidance from the Court about whether discovery into Circle's policies and responses to recent similar exploits are relevant, *see supra* Part IV.B, will help to streamline or avoid future disputes about those terms.

Plaintiffs respectfully request that the Court require Defendants to provide hit reports for both parties' proposed search terms within 7 days of the entrance of this Court's order, to provide supplemental hit reports if additional documents are collected and added, and to confirm the date range and custodial files which were included.

**E. Document Custodians**

After failing to disclose any Circle employees in their initial disclosures, Defendants unilaterally designated ten individuals as custodians, then supplemented their initial disclosures and identified only those ten individuals. Plaintiffs identified Circle CEO Jeremy Allaire, President Heath Tarbert, and Chief Risk and Compliance Office Mandeep Walia as potential additional custodians. Defendants refused to

consider them, claiming that the apex doctrine required Plaintiffs to show each had unique information before producing their documents.

Plaintiffs disagreed and shared authority explaining that there is no apex doctrine for documents, but sought to confer further on other proposed custodians, including Muhammad Saad. Defendants said they would add Mr. Saad as a custodian, but only if Plaintiffs agreed to abandon their dispute about the relevant time period, additional search terms, and any further custodians.[6]

Because all four are likely to possess non-duplicative, relevant information proportional to the needs of the case, Defendants should produce relevant and responsive documents from their files.

**1. Mr. Allaire, Mr. Tarbert, and Mr. Walia should be custodians.**

Contrary to Defendants' unfounded assertion, there is no such thing as an "apex custodian," nor any rule that Plaintiffs must show an individual has unique knowledge before obtaining their documents. The judge-made apex doctrine purports to protect high-ranking officials from harassing *depositions*. When applied, it requires the party seeking a deposition to demonstrate that the witness has "unique" first-hand, personal knowledge that cannot be obtained from another witness to avoid requiring high-ranking officials to sit for depositions on matters known generally throughout an organization. The apex doctrine has not been adopted by the First Circuit, and other circuit courts have rejected the doctrine as conflicting with Rule 26(c)'s requirement that the party resisting discovery show why discovery should not be had. *E.g.*, *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012) (finding abuse of discretion to rely on apex doctrine); *Race v. Cambridge Health Alliance*, 2024 WL 2330741, at *5 (D. Mass. May 22, 2024) (recognizing that whether the apex doctrine even applies to private companies is "an open question in the First Circuit").

---

[6] Defendants also offered Holly Maddox as a custodian as part of this proposal.

But even assuming that there is any obligation on Plaintiffs (as the party seeking discovery) to demonstrate a witness has "unique" knowledge before obtaining their deposition, there is no such thing as an apex *custodian*. The rule applies only to deposition and trial appearances—not document requests. *See Race*, 2024 WL 2330741, at *5 (explaining the doctrine applies to "depositions of individuals"); *see also, e.g.*, *Howington v. Taiwan Semiconductor Mftg. Co., Ltd.*, 2026 WL 242040, at *2 (N.D. Cal. Jan. 29, 2026) ("[T]he apex doctrine does not apply to document discovery, but only to deposition discovery.").

Plaintiffs explained that Defendants' position is not supported in law, provided authority explaining the distinction, and asked Defendants to share any authority they had supporting their belief that Plaintiffs were required to demonstrate that executive custodians possessed entirely unique information from all other custodians. Defendants confirmed they did not have authority to support their position and declined to search for any, but still refused to add these individuals as custodians on the same grounds.

Plaintiffs explained to Defendants why each individual is likely to have relevant and non-duplicative information:

***Jeremy Allaire.*** Mr. Allaire has information regarding Circle's company-wide policies concerning transactions involving stolen assets, the escalation of major incidents to senior management, and executive-level consideration of, or response to, the Drift Exploit. Mr. Allaire has also spoken publicly to defend Circle's actions and decisions in response to the Drift Exploit.

***Heath Tarbert.*** As President, Tarbert leads Circle's legal, compliance, risk, communications, and policy functions. He therefore has relevant information about Circle's policies for responding to stolen assets, escalating significant incidents, and terminating services or use of Circle's technologies. He also has non-duplicative information regarding Circle's public statements about the Drift Exploit, including their drafting, review, and approval.

***Mandeep Walia.*** As Chief Compliance and Risk Officer, Walia has relevant information regarding Circle's handling of financial crimes, including how suspicious or stolen assets are identified and escalated for review, the circumstances under which Circle will withhold access to its CCTP bridging technology or freeze or blocklist exploiters' wallets, and how those procedures were applied to the Drift Exploit.

Early discovery has borne out that these individuals were involved in the response to the Drift Exploit and are likely to have first-hand, personal knowledge of the facts surrounding Defendants' responses to the exploit and decisions surrounding implementation of Defendants' policies.[7] By nature of their position, their documents are likely to contain information that lower-level employees do not have access to, and the relevance of their knowledge and input about best courses of action is uniquely relevant as the leadership of the company. *See, e.g., In re Meta Pixel Healthcare Litig.*, 2023 WL 5767460, at *2 (N.D. Cal. Sept. 6, 2023) (ordering expanded custodial discovery because "documents reflecting how a decision was made are more likely to be found in the decision makers' files than in the files of those who are tasked with implementing the decision or communicating it to others").

Defendants never contested Plaintiffs' descriptions, or substantively disputed that these custodians are likely to have relevant, non-duplicative information not covered by other custodians—they raised only their "apex" objection. It is not Plaintiffs' burden to show that custodians have unique documents from all other custodians, only that their information is *likely* to contain non-duplicative relevant information

[7] Defendants have designated over 600 out of 704 documents produced as "confidential," including what appears to be almost every internal company chat. Although no protective order has yet been entered, the parties have agreed to respect confidentiality designations in the interim. If it would be helpful to review materials supporting Plaintiffs' belief that Mr. Allaire, Mr. Tarbert, or Mr. Walia have firsthand knowledge of the Drift Exploit and were personally involved in the response, Plaintiffs can submit those materials subject to the Court's impoundment procedure upon request.

proportional to the needs of the case. Document production is what is required to make the showing contemplated by the apex doctrine in the first place: few, if any, plaintiffs could demonstrate a deponent has unique knowledge without documentary evidence to rely upon. Because Defendants gave no valid burden or proportionality objection, the Court should order Defendants to include Mr. Allaire, Mr. Tarbert, and Mr. Walia's documents.

**2. Mr. Saad should be a custodian.**

Plaintiffs also seek to add Mr. Saad as a custodian. Although Mr. Saad's title and role at the company are unknown, early documents show that he was involved in the initial investigation into the Drift Exploit and worked with multiple individuals to provide regular updates about his findings. Based on discovery already produced, Mr. Saad appears to have a technical or engineering background, as opposed to the regulatory, communications, or customer-facing roles occupied by most of the custodians Defendants selected. Therefore, Plaintiffs believe he has personal knowledge and non-duplicative information as compared to other custodians.

Mr. Saad was included in a list of potential custodians that Plaintiffs proposed following review of Defendant's first production. Plaintiffs requested that Defendants confer about whether any of those individuals should be added, noting that because Defendants had not produced organizational charts, *see infra* Part IV.F, Plaintiffs had limited knowledge about potential custodians' roles and possible redundancies with other custodians. Defendants did not give any reasons that any particular custodian should or should not be added, but offered Mr. Saad as one of two custodians that they would agree to add if Plaintiffs dropped their requests for Mr. Allaire, Mr. Tarbert, and Mr. Walia; their request for hit reports or additional search terms; and their requests for any documents predating the Drift Exploit.

Plaintiffs cannot agree to the unreasonable terms upon which Defendants conditioned Mr. Saad's inclusion, and have explained to Defendants that discovery is not limited to individuals that Defendants select. *See United States ex rel. Long v. Janssen Biotech, Inc.*, 2023 WL 2429358, at *3-5 (D. Mass. Mar. 9, 2023). Because Defendants have been repeatedly unwilling to add *any* custodians without forcing Plaintiffs to accept limitations on search terms and the relevant discovery period, Plaintiffs must seek relief from the Court.

Plaintiffs respectfully request that the Court compel Defendants to add Mr. Allaire, Mr. Saad, Mr. Tarbert, and Mr. Walia as custodians and begin producing documents from their custodial files within 28 days of the entrance of this Court's order.

**F. Organizational Charts**

As the dispute over custodians illustrates, Plaintiffs have faced difficulty in learning about Circle's reporting structure. To advance discovery, the Court should compel Defendants to produce "All organizational charts in effect on April 1, 2026, identifying the names and titles of Your employees and management, including reporting structure," *see* Ex. A (RFP No. 16), and submit a sworn statement identifying persons in possession of substantial discoverable information pursuant to Local Rule 26.1(b)(2)(A).

Defendants unilaterally selected 10 individuals from their company who they identified as having information relevant to their own defenses and began producing documents from those individuals. After Defendants failed to identify any employees in their initial disclosures, Plaintiffs served RFP No. 16, which sought "All organizational charts in effect on April 1, 2026, identifying the names and titles of Your employees and management, including reporting structure." Defendants objected that the request was overbroad and unduly burdensome because "it is not limited to employees and management who are reasonably likely to have discoverable information." Ex. A (RFP

No. 16). When the parties first conferred, Defendants stated they did not know whether organizational charts exist; when they next conferred, Defendants confirmed they had not followed up and could not confirm when they would do so.

Meanwhile, Defendants have resisted Plaintiffs' attempts to learn about Circle's reporting structure, to propose additional custodians, or even to discuss which employees may have non-duplicative information proportional to the needs of the case. Coupled with Defendants' extreme strictures on the scope of documents they have agreed to search for or produce, Plaintiffs have little information about the identities of the key players at the time of the Drift Exploit, which has severely limited Plaintiffs' ability to investigate their case.

Organizational charts are "plainly relevant and discoverable," including to assist in identifying custodians. *Castillo v. Albert Einstein Coll. of Med. Inc.*, 2025 WL 1789827, at *3 (S.D.N.Y. June 30, 2025); *Linet Ams., Inc. v. Hill-Rom Holdings, Inc.*, 2025 WL 889480, at *4 (N.D. Ill. Mar. 17, 2025). Even if Defendants had pointed to some publicly available company directory that included information about its employees—which they have not done, and Plaintiffs have not been able to independently find—courts still require production of company-maintained information. *See Castillo*, 2025 WL 1789827, at *3.

Defendants' cursory burden objection is nonsensical. Plaintiffs' request is exceedingly narrow, targeting only charts that were in effect on a single day: April 1, 2026, the date of the Drift Exploit. Ex. A (RFP No. 16). Even if information about reporting structure is stored in multiple locations or in multiple documents—a fact Defendants have never confirmed or even appear to have investigated—Defendants have never suggested that the material would be voluminous or difficult to locate.

As a result of Defendants' failure to investigate, it is unclear whether responsive documents exist. If they do not, Defendants should confirm as much. If they do, but include both relevant and irrelevant information, they must be produced. *See Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018) ("It is a rare document that contains only

relevant information; and irrelevant information within an otherwise relevant document may provide context necessary to understand the relevant information."). Courts not only require production of such documents, but also routinely place limitations on any redaction of irrelevant information. *E.g.*, *Weidman v. Ford Motor Co.*, 340 F.R.D. 106, 112 (E.D. Mich. 2021) (collecting cases).

If no discoverable documents exist—which Defendants have never confirmed—the Local Rules supply a remedy. The Court may order Defendants to submit:

> a sworn statement . . . that identifies: (A) all persons then known to the defendant or the defendant's attorneys who witnessed the transaction or occurrence giving rise to the claim or otherwise is known or believed to have substantial discoverable information about the claims or defenses, together with a statement of the subject and a brief summary of that information; (B) all opposing parties, and all officers, directors, and employees of opposing parties, from whom statements have been obtained by or on behalf of the defendant regarding the subject matter of the claims or defenses; and (C) all governmental agencies or officials then known to the defendant or the defendant's attorneys to have investigated the transaction or occurrence giving rise to the claims or defenses.

L.R. 26.1(b)(2).

The circumstances here warrant both remedies. Defendants have unilaterally selected ten custodians and begun producing their documents, without input from Plaintiffs. Defendants have not investigated Plaintiffs' proposed custodians, gave no response about which individuals may have non-duplicative information, and resisted providing even background information about the company's organizational and reporting structure. It is almost four months after the Rule 26(f) conference and Plaintiffs still lack basic knowledge about the company's structure.

Plaintiffs respectfully request that the Court compel Defendants to produce organizational charts and submit a sworn statement identifying *all* knowledgeable individuals—not just those Defendants select—within 7 days of the entry of the Court's order.

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion in full.

Dated: October 14, 2026

Respectfully submitted,

*/s/ Rosemary M. Rivas*

Rosemary M. Rivas (admitted *pro hac vice*)
Parker Hutchinson (admitted *pro hac vice*)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
pnh@classlawgroup.com
rmr@classlawgroup.com

John Roddy (BBO #424240)
**BAILEY & GLASSER LLP**
101 Arch Street, 8th Floor
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954
jroddy@baileyglasser.com

*Counsel for Plaintiffs Joshua McCollum, Oakford Crawson LLC, Jeffrey Magoveny, Ng Boon Min, Lim Teck Yeow, Alexej Kravetsker, Michael Medovoj, and the Proposed Class*

**RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), counsel for Plaintiffs conferred three times and have attempted in good faith to resolve or narrow the issues in this motion.

*/s/ Rosemary M. Rivas*
Rosemary M. Rivas

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2026, the foregoing was filed through the Court's CM/ECF system and will be sent electronically to the registered participants.

*/s/ Rosemary M. Rivas*
Rosemary M. Rivas